IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-337-S-BN |
| | § | |
| NATIONWIDE SECURITY | § | |
| SOLUTIONS, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from

United States District Judge Karen Gren Scholer.

Defendant Nationwide Security Solutions, Inc. ("Nationwide") has filed its First

Motion to Dismiss Second Amended Complaint, Alternatively, Motion to Strike Second

Amended Complaint. *See* Dkt. No. 101.

Plaintiff Craig Cunningham has filed a response. *See* Dkt. No. 105. Nationwide

has not filed a reply, and its time to do so has passed. *See* Dkt. No. 103.

Defendant Micah Davis has filed a Motion to Dismiss Pursuant to Federal Rule

of Civil Procedure 12(b)(2), (b)(6) and Joinder in Nationwide's Motion to Dismiss for

Improper Venue. *See* Dkt. No. 112.

Plaintiff Craig Cunningham has filed a response, *see* Dkt. No. 116, and

Defendant Davis has filed a reply, *see* Dkt. No. 118.

For the reasons and to the extent explained below, the Court should deny Defendant Nationwide's First Motion to Dismiss Second Amended Complaint, Alternatively, Motion to Strike Second Amended Complaint [Dkt. No. 101] and should grant Defendant Davis's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(6) and Joinder in Nationwide's Motion to Dismiss for Improper Venue [Dkt. No. 112].

## Background

This case arises out several unsolicited phone calls that Plaintiff Craig Cunningham alleges that he received in 2016 and 2017.

On February 4, 2017, Mr. Cunningham filed this action against Nationwide and other defendants asserting violations of the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 1. Mr. Cunningham later amended his complaint to include two additional claims for violation of the Fair Credit Reporting Act ("FCRA") and common law invasion of privacy. *See* Dkt. No. 15 (the "First Amended Complaint").

On May 31, 2017, Nationwide moved to dismiss Mr. Cunningham's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). *See* Dkt. No. 22. The Court granted Nationwide's motion to dismiss in part, holding that Mr. Cunningham had sufficiently alleged his TCPA and common law invasion of privacy claims but that Mr. Cunningham had failed to state a claim under the FCRA. *See* Dkt. No. 42 at 11. The Court granted Mr. Cunningham three weeks to replead his FCRA claim. *See id.*

Mr. Cunningham never filed an amended complaint, and Nationwide never filed

2

an answer to Mr. Cunningham's remaining TCPA and common law invasion of privacy claims.

But, after a series of motions that Mr. Cunningham filed to compel discovery and secure a default judgment, Nationwide filed a Second Motion to Dismiss, *see* Dkt. No. 58 at 1, again seeking to dismiss Mr. Cunningham's First Amended Complaint – including the FCRA claim that had already been dismissed without prejudice – for failure to effectuate proper service. Mr. Cunningham did not respond to the Second Motion to Dismiss.

On January 18, 2018, the Court granted the parties' Agreed Motion to Amend Scheduling Order, which, according to the parties' agreement, resolved all then-pending motions in the case, including Nationwide's Second Motion to Dismiss. *See* Dkt. No. 80.

Nationwide then filed its Third Motion to Dismiss First Amended Complaint, again seeking to dismiss Mr. Cunningham's First Amended Complaint, which was still the live pleading, for three reasons – the first and second of which were already considered by the Court in deciding Nationwide's first motion to dismiss: (1) improper venue; (2) insufficient service of process; and (3) failure to state a claim under the FCRA. *See* Dkt. No. 82.

Instead of responding to Nationwide's Third Motion to Dismiss, Mr. Cunningham filed a Motion for Leave to File a Second Amended Complaint (the "Motion for Leave"), which sought to add new defendants and promised to "resolve [Nationwide's] complaints in their now third motion to dismiss." *See* Dkt. No. 89.

3

On March 22, 2018, the Court granted Mr. Cunningham's Motion for Leave and directed the Clerk of Court to file Mr. Cunningham's Second Amended Complaint on the docket. *See* Dkt. No. 95 at 3.

Mr. Cunningham's Second Amended Complaint repleaded Mr. Cunningham's FCRA, TCPA, and common law invasion of privacy claims against Nationwide. *See* Dkt. No. 96. The Second Amended Complaint further alleged that two newly-added defendants, Jason Cane and Mairin Cane, "are liable for each and every illegal telemarketing call placed by the defendants, as well as the invasion of privacy claims and FCRA violations against the Plaintiff," *id.* at 11 of 31; and that the third newly-added defendant, Micah Davis, "is liable for the FCRA violations and invasion of privacy damages as a result of the credit inquiry," *id.*

In light of Mr. Cunningham's filing a Second Amended Complaint, the Court ordered Nationwide to file a report advising the Court of the status of its Third Motion to Dismiss. *See* Dkt. No. 95 at 4.

Nationwide filed its Status Report as ordered, but Nationwide did not assert that their Third Motion to Dismiss could be directed to the Second Amended Complaint. As the Court explained in its Order Regarding Defendant's Status Report on Its Third Motion to Dismiss First Amended Complaint, *see* Dkt. No. 99,

> Nationwide ... contends [in its Status Report] that Mr. Cunningham's Second Amended Complaint should be stricken from the record, *see id.* at 1, and that Mr. Cunningham's "First Amended Complaint [Dkt. No. 15] was not superseded by his Second Amended Complaint [Dkt. No. 96]," *id.* at 2.
> Nationwide gives five reasons for its position that the Second

Amended Complaint should not supersede the First Amended Complaint: (1) the Second Amended Complaint violates Federal Rule of Civil Procedure 11; (2) the Second Amended Complaint "merely adds information regarding alleged business contacts" without establishing proper venue; (3) the Second Amended Complaint "is mostly identical to that of Plaintiff's First Amended Complaint"; (4) Mr. Cunningham's new vicarious liability claim incorrectly applies the doctrine of vicarious liability; and (5) Mr. Cunningham "requested leave to amend [his] complaint, not to join parties." *Id.* at 1-2.

*Id.* at 2.

The Court rejected Nationwide's arguments, and, construing Nationwide's Status Report as a motion for reconsideration, the Court declined to reverse its previous order allowing Mr. Cunningham to file his Second Amended Complaint. *See id.* at 2-5. The Court further ordered Nationwide to respond to Mr. Cunningham's Second Amended Complaint by April 18, 2018. *See id.* at 5.

On April 18, 2018, Nationwide filed its First Motion to Dismiss Second Amended Complaint, Alternatively, Motion to Strike Second Amended Complaint that is before the Court. *See* Dkt. No. 101 ("Nationwide's MTD").

In its supporting brief, Nationwide makes many of the same arguments that Nationwide advanced in its previous motions to dismiss and in Nationwide's Status Report. Nationwide argues that Mr. Cunningham's Second Amended Complaint should be dismissed because (1) "the appropriate venue for this case is in the Western District of Washington," Dkt. No. 102 at 4; (2) Mr. Cunningham has failed to effectuate proper service of the Second Amended Complaint on Nationwide, *see id*; and (3) Mr. Cunningham has failed to state a claim under the FCRA, *see id.* at 4-5. Alternatively,

Nationwide argues that the Second Amended Complaint should be stricken from the record because the Second Amended Complaint is unsigned in violation of Federal Rule of Civil Procedure 11(a). *See id.* at 5-6.

On April 4, 2018, Mr. Cunningham filed Plaintiff's Corrected Second Amended Complaint, which is substantively the same as his Second Amended Complaint but bears Mr. Cunningham's signature. *See* Dkt. No. 104. Although Plaintiff's Corrected Second Amended Complaint was filed without attachments, in light of the circumstances under which Mr. Cunningham filed his corrected pleading, the Court will consider the attachments to Plaintiff's Second Amended Complaint as attached to Plaintiff's Corrected Second Amended Complaint.

On June 22, 2018, the Court terminated Nationwide's Third Motion to Dismiss First Amended Complaint [Dkt. No. 82] "as superseded by the First Motion to Dismiss Second Amended Complaint, Alternatively, Motion to Strike Second Amended Complaint that is before the Court [Dkt. No. 101], which is directed specifically to the now-live complaint, the Second Amended Complaint." Dkt. No. 110 at 2-3.

On July 5, 2018, Defendant Micah Davis filed his Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(6) and Joinder in Nationwide's Motion to Dismiss for Improper Venue. *See* Dkt. No. 112 ("Davis's MTD").

## Legal Standards

I.   Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has

6

jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that the he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Due Process Clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (internal quotation

marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Second, in determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.'" *McFadin*, 587 F.3d at 759-60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum

state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir.

Sept.16, 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F.3d 429, 2014 WL 4799716, at *2. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional

touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

## II.    Rule 12(b)(3) Motion to Dismiss for Improper Venue

On a Federal Rule of Civil Procedure 12(b)(3) motion, once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper. *See International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003). In resolving a Rule 12(b)(3) motion, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B. V.*, 570 F.3d 233, 238 (5th Cir. 2009) (internal quotation marks omitted). In deciding a Rule 12(b)(3) motion, the Court must view all the facts in a light most favorable to the plaintiff. *See id.* at 237.

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have

been brought."

> Section 1406(a) allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits. [*Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967).] The statute specifically refers to "laying venue in the wrong division or district," but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985).... [A] division or district may be "wrong" under Section 1406(a) when the original court lacks personal jurisdiction. *Id.*

*Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). "The district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under § 1406(a)." *LSF4 Loan Invs. I, LLC v. Weingart*, No. 3:06-cv-419-M, 2006 WL 2370803, at *3 (N.D. Tex. Aug. 15, 2006) (citation omitted).

III.   <u>Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process</u>

Service of process is "fundamental to any procedural imposition on a named defendant" and is therefore "the official trigger for responsive action by an individual or entity named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 353 (1999). Federal Rule of Civil Procedure 12(b)(5) provides for dismissal for insufficient service of process, and "[a] motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (per curiam); *see also Raburn v. Dae Woo, Inc.*, No. 3:09-cv-1172-G, 2010 WL 743933, at *1 (N.D. Tex. Mar. 3, 2010) ("A 12(b)(5) motion to dismiss poses a challenge to the manner or method of service attempted by the plaintiff rather than the form or content of the summons." (citing *Tinsley v. Comm'r of Internal*

*Revenue Serv.*, No. 3:96-cv-1769-P, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998))).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)); *accord Quinn*, 470 F. App'x at 323. A plaintiff's pro se status does not excuse any failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

IV.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615

F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th

Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion" – although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. Dec. 12, 2016). The Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Id.* (internal quotation marks and citations omitted).

### Analysis

For the reasons explained below, the Court should deny Nationwide's MTD and should grant Davis's MTD.

I.    The Court should deny Nationwide's MTD.

Nationwide moves to dismiss Mr. Cunningham's Second Amended Complaint for (1) improper venue, (2) insufficient service of process, and (3) failure to state a claim under the FCRA. Nationwide argues in the alternative that Mr. Cunningham's Second Amended Complaint should be stricken from the record for Mr. Cunningham's failure

to comply with Rule 11.

Because Mr. Cunningham's Corrected Second Amended Complaint contains the same allegations asserted in his Second Amended Complaint, the undersigned considers Nationwide's MTD as moving to dismiss Mr. Cunningham's Corrected Second Amended Complaint. *See Rountree v. Dyson*, 892 F.3d 681, 683-84 (5th Cir. 2018) (explaining that, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading" (citation omited)).

For the reasons discussed below, Nationwide's MTD should be denied.

A.    Rule 12(b)(3): Improper Venue

Nationwide argues that Mr. Cunningham's Second Amended Complaint should be dismissed because venue is proper in the Western District of Washington or the Eastern District of Texas but not in the Northern District of Texas.

Nationwide's motion to dismiss for improper venue should be denied because Nationwide did not raise improper venue in its previous motions to dismiss.

Federal Rule of Civil Procedure 12(b)(3) provides that a party may assert the defense of improper venue in a Rule 12 motion. *See* FED. R. CIV. P. 12(b)(3). But "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g). And a party waives an improper venue defense by omitting it from an earlier-filed Rule 12 motion. *See* FED. R. CIV. P. 12(h)(1)(A).

The advisory committee notes following the text of Rule 12 explain the policy

behind the consolidation requirement in Rule 12(g)(2):

> This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case.... A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver [under subdivision (h)(1)(A) ] reinforces the policy of subdivision (g) forbidding successive motions.

Advisory Committee Notes for FED. R. CIV. P. 12, subdivision (g).

Nationwide seems to argue that venue is now improper because Nationwide is the only remaining defendant named in the original complaint. But "[t]he district in which proper venue lies 'is determined at the time the complaint is filed and is not affected by a subsequent change of parties.'" *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997) (quoting *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346 (D. Or. 1991)).

Nationwide could have raised improper venue in its first or second Rule 12 motion to dismiss the First Amended Complaint but did not. Mr. Cunningham's filing a Second Amended Complaint does not afford Nationwide the opportunity to contest venue when Nationwide should have done so previously. *See Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647-48 (W.D. Tex. 2006).

The Court should deny Nationwide's MTD under Rule 12(b)(3).

B.     Rule 12(b)(5): Insufficient Service of Process

Nationwide argues that Mr. Cunningham's claims against it should be dismissed because (1) the First Amended Complaint was not properly served and, (2) despite being ordered to do so, Mr. Cunningham has not attempted to serve the Second Amended

Complaint on Nationwide.

Nationwide's motion to dismiss for insufficient service of process should be denied because Nationwide did not raise insufficient service of process in its previous motions to dismiss.

The Court addressed a variation of Nationwide's first argument – that the First Amended Complaint was not properly served – in Nationwide's first motion to dismiss the First Amended Complaint. *See* Dkt. No. 42. In that motion to dismiss, Nationwide argued:

> Under Rule 4(e)(1) of the Federal Rules of Civil Procedure, the Plaintiff is required to follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 106 of the Texas Rules of Civil Procedure requires the Plaintiff to serve the defendant with a true copy of the citation and a copy of the petition attached thereto. Nationwide is an Oregon corporation with a registered agent in Texas. Plaintiff, yet Plaintiff sent the citation to a Florida address in contravention of the Texas and Federal rules regarding service. *See* Dkt. 1 ¶ 2.
>
> District courts have discretion to quash the defective service of process and provide a plaintiff another opportunity to effect proper service of process. *Bowman v. Sanofi-Aventis*, No. A-09-CA-192-SS, 2009 WL 5083431, at *2 (W.D. Tex. Apr. 16, 2009) (citing *Neely v. Khurana*, No. 3:07-CV-1344-D, 2008 WL 938904, at *2). Nationwide requests the citation be struck.

Dkt. No. 23 at 9.

The Court rejected Nationwide's position, explaining that,

[b]ecause Defendant Nationwide is a corporation, service of process is governed by Federal Rule of Civil Procedure 4(h). Rule 4(h) provides that a plaintiff may effectuate service of process upon a corporation by: (1) following the methods provided by the law of the state in which the district court is located or the state in which service is made, or (2) delivering a copy of the summons and complaint to an officer, managing

> or general agent, or any agent authorized by appointment or by law to receive service of process. FED. R. CIV. P. 4(h). Here, Plaintiff belatedly served Jason Cane, the CEO of Nationwide, and the return for that service was filed on October 23, 2017. (ECF No. 41). Accordingly, Plaintiff properly served Defendant in compliance with Rule 4(h).

Dkt. No. 42 at 3-4.

But Nationwide now argues in its MTD – and submits affidavits to prove – that service of process was insufficient for a different reason: because "Jason Cane was neither the CEO or a corporate officer of Nationwide at the time" that he was served with the First Amended Complaint. Dkt. No. 102 at 4 of 8; *see also* Dkt. Nos. 101-1 & 101-2 (affidavits of Jason Cane and John Arroyave stating that Jason Cane has been employed exclusively by Skyline Security Management, Inc., since August 29, 2017).

Nationwide's argument and proof to support it should have been raised in Nationwide's first motion to dismiss the First Amended Complaint. For the reasons explained above as to improper venue, the Court should not now consider arguments and evidence that Nationwide could have and should have raised before the Court in its previous Rule 12 motion, and Nationwide's new argument as to insufficient service of process of the First Amended Complaint has been waived. *See* FED. R. CIV. P. 12(g) & (h)(1)(A); *Black v. Nixon*, 3-16-cv-255-G-BK, 2016 WL 4014074, at *1 (N.D. Tex. July 5, 2016), *rep. & rec. adopted*, 2016 WL 3997602 (N.D. Tex. July 26, 2016) ("Although [p]laintiff ... did not serve the [d]efendants, [defendants] waived any objection regarding defective service of process by moving to dismiss [p]laintiff's complaint without raising that defense.").

Nationwide's second argument – that Mr. Cunningham has not yet served the

Second Amended Complaint – was raised too soon. Before Nationwide filed its MTD on April 18, 2018, the Court had set a June 20, 2018 deadline for Mr. Cunningham to serve the Second Amended Complaint. Nationwide's argument in its MTD that Mr. Cunningham "has shown no desire or effort to serve the Second Amended Complaint upon Nationwide," Dkt. No. 102 at 4, was premature. And the Court should not entertain a Rule 12(b)(5) motion to dismiss for insufficient service of process brought before service is attempted and before the deadline to effectuate service has expired.

The Court should deny Nationwide's MTD under Rule 12(b)(5).

C.    Rule 12(b)(6): Failure to State a Claim Under the FCRA

Nationwide argues that Mr. Cunningham has failed to state a claim under the FCRA.

The Court should deny Nationwide's motion to dismiss for failure to state a claim.

As the Court explained in its order on Nationwide's motion to dismiss the First Amended Complaint, "[t]o assert a violation of the FCRA, a plaintiff must allege (1) that there was a 'consumer report,' (2) that defendant used or obtained the report (3) without a permissible purpose, and (4) that defendant acted negligently or willfully. *See Norman v. Lyons*, 2013 WL 655058, at *2 (N.D. Tex. Feb. 22, 2013) (citing 15 U.S.C. § 1681b(a)); *see also* 15 U.S.C. §§ 1681n, 1681o." Dkt. No. 42 at 8 (footnote omitted).

Here, as with Nationwide's motion to dismiss the First Amended Complaint, Nationwide contests the sufficiency of Mr. Cunningham's allegations regarding the third element: the lack of permissible purpose. Nationwide specifically asserts that the "[Second] Amended Complaint lacks any allegation about the purported review of

21

Plaintiff's credit history or why there was no permissible purpose, if such a review occurred." Dkt. No. 102 at 4-5.

In deciding Nationwide's motion to dismiss the First Amended Complaint, the Court determined that Mr. Cunningham had not sufficiently alleged that Nationwide lacked a permissible purpose. *See* Dkt. No. 42 at 9. The Court explained that an exhibit attached to Mr. Cunningham's response to the motion could provide sufficient detail to state a claim under the FCRA, but the Court declined to consider that exhibit in deciding Nationwide's Rule 12(b)(6) motion. *See id.* at 9-10 ("In his response, Plaintiff attaches a new exhibit which suggests that Defendant accessed Plaintiff's credit report without providing an explanation as to why it did so. (Pl. Resp. at 15). Although such details are sufficient to establish the lack of permissible purpose, *see Smith v. Safeco Insurance*, 2013 WL 5609323, *1 (N.D. Ill., Oct. 11, 2013), they are not contained within the Amended Complaint. ... Because the Court did not give notice that it would consider facts outside of the pleadings, the Court disregards those factual allegations made by Plaintiff in his Response, to the extent that they are not in the Amended Complaint.").

In his Corrected Second Amended Complaint, Mr. Cunningham alleges the facts contained in the exhibit that he had submitted in response to Nationwide's motion to dismiss the First Amended Complaint:

> 32. The Plaintiff then disputed the permissible purpose of the inquiry by Defendant Nationwide with credit report furnisher Microbilt[.] [A]nd on June 15, 2017, Microbilt responded in writing to the Plaintiff's dispute with a letter that confirms that there was no apparent permissible purpose for obtaining the Plaintiff's credit report by Defendant Nationwide.

22

33. Microbilt stated two important facts in the letter[.] [F]irst, Microbilt confirmed that Defendant Nationwide had indeed obtained the Plaintiff's credit report[,] stating: "*We have determined that your consumer file was accessed by Microbilt's customer Nationwide Security Solutions located at 7200 NE 41st Street, Suite 101, Vancouver, WA 98662 on April 24, 2017*[.]" More importantly, the letter from Microbilt stated: "*Based on the lack of response by our customer, Nationwide Security Solutions, it appears that the inquiry on your consumer file may have been made without pr[o]per aut[h]orization or* [']*permissible purpose*['] *under the Fair Credit Reporting Act, 15 USC 1681 et seq.*" ....

34. The Plaintiff did not give permission to Defendant Nationwide to obtain his consumer file, and none of the other reasons in 15 USC 1681(b) were in play, such as an employment application, insurance application, an application for credit, or the application for a governmental license.

*See* Dkt. No. 104 at 9-10. Mr. Cunningham also attaches the exhibit to his pleading. *See* Dkt. No. 96 at 17-18 of 31.

These allegations, taken as true, are sufficient to support an inference that Nationwide pulled Mr. Cunningham's credit report without a permissible purpose. *See* Dkt. No. 42 at 9; *Smith*, 2013 WL 5609323, at *1 ("After learning that [Defendant] accessed his credit reports, [Plaintiff] contacted [Defendant] to find out why. [Defendant] did not explain to [Plaintiff] why anyone at or affiliated with [Defendant] pulled [Plaintiff]'s credit reports. These allegations, taken as true, are sufficient to support an inference that [Defendant] pulled [Plaintiff]'s credit reports without a permissible purpose." (citations omitted)).

The Court should deny Nationwide's motion to dismiss Mr. Cunningham's FCRA claim under Rule 12(b)(6).

D.    <u>Rules 11(a) and 41(b): Failure to Sign the Second Amended Complaint</u>

Nationwide argues that Mr. Cunningham's Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 41(b) or stricken from the record under Federal Rule of Civil Procedure 11(a) because the Second Amended Complaint was filed unsigned.

Nationwide's motion to dismiss under Rule 41(b) and motion to strike under Rule 11(a) should be denied because Mr. Cunningham promptly corrected his omission.

Federal Rule of Civil Procedure 11(a) provides that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." FED. R. CIV. P. 11(a). And Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).

Nationwide argues that "Nationwide called the Plaintiff's attention to this failure [to sign the Second Amended Complaint] in its Status Report on its Third Motion to Dismiss First Amended Complaint on March 29, 2018. Nearly three weeks have passed and the Plaintiff shows no intention of correcting his failure or to comply with the Federal Rules of Civil Procedure." Dkt. No. 102 at 5 (citation omitted).

But Nationwide did not call the omitted signature to Mr. Cunningham's attention until Nationwide filed its MTD, and Mr. Cunningham then promptly corrected his error. Nationwide's referenced Status Report provided, without explanation, that "Plaintiff's Second Amended Complaint has failed to comply with Federal Rule of Civil Procedure Rule 11." Dkt. No. 97 at 1. Nowhere in the Status Report does Nationwide mention Mr.

24

Cunningham's omitted signature. And neither the Court nor apparently Mr. Cunningham understood Nationwide's statement to identify such an error.

But, four days after Nationwide, in its MTD, explicitly alerted the Court and Mr. Cunningham that the Second Amended Complaint is unsigned, Mr. Cunningham filed his Corrected Second Amended Complaint bearing Mr. Cunningham's signature. *See* Dkt. No. 104.

The Court should deny Nationwide's Rule 11(a) motion to strike and Rule 41(b) motion to dismiss.

## II.    The Court should grant Davis's MTD.

Davis moves to dismiss Cunningham's Second Amended Complaint for (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim under the FCRA.

The undersigned concludes that, because the Court lacks personal jurisdiction over Davis in this action, Mr. Cunningham's claims against Davis should be dismissed.

Davis claims to be a resident of Utah, *see* Dkt. No. 114 at 3 of 4, and asserts that this Court lacks personal jurisdiction over him because "Mr. Davis is not alleged to nor does he have any connection with the State of Texas," *see* Dkt. No. 112 at 1.

Because the Court is deciding Davis's MTD without an evidentiary hearing, it is Mr. Cunningham's burden – not Davis's – to present a *prima facie* case for personal jurisdiction. *See Monkton Ins. Servs.*, 768 F.3d at 431; *Johnston*, 523 F.3d at 609; *Gardemal*, 186 at 592; *Wilson*, 20 F.3d at 648.

Mr. Cunningham has failed to present a *prima facie* case for personal jurisdiction because he has not shown that Davis has sufficient "minimum contacts" with Texas.

"'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000). Mr. Cunningham appears to assert both specific jurisdiction and general jurisdiction here.

Mr. Cunningham has failed to show general jurisdiction. Mr. Cunningham alleges in his Corrected Second Amended Complaint that "[t]his Court has personal jurisdiction over Defendants because Defendant conducts significant amounts of business within this District to include placing calls and has incorporated in the state of Texas." Dkt. No. 104 at 2.

And, in his response to Davis's MTD, Mr. Cunningham argues that this Court has personal jurisdiction over Davis because Nationwide is "register[ed] ... in Texas as a Texas corporation." Dkt. No. 116 at 1; *see also id.* at 2 ("Defendants decided to form a Texas corporation and operate in Texas with full knowledge that they may be sued in Texas."). Mr. Cunningham further maintains that "the defendants[] conduct business and have already agreed to jurisdiction in ... Texas" because "Defendants were sued by Monitronics" in Texas before. *See id.* at 2. And Mr. Cunningham attached to his pleading a petition from a different lawsuit in which Monitronics International Inc. alleged that it had entered into an agreement with Nationwide wherein Nationwide "agreed to irrevocably submit to the jurisdiction of any court of the State of Texas ... with respect to the subject matter of this suit." Dkt. No. 96 at 21 of 31.

26

But Nationwide's alleged contacts with Texas are insufficient to establish this Court's personal jurisdiction over Davis. *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013) ("With limited exceptions, the fiduciary shield doctrine prohibits a court from exercising personal jurisdiction over an individual based solely on jurisdiction over the company with which the individual is associated. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)."). And Mr. Cunningham's Corrected Second Amended Complaint contains no allegations that would establish that Davis's affiliations with Texas "are so continuous and systematic" as to render Davis "essentially at home" in Texas. *Daimler AG*, 134 S. Ct. at 761. Accordingly, Mr. Cunningham has not shown that the Court has general jurisdiction over Davis.

Neither has Mr. Cunningham established the Court's specific jurisdiction over Davis.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 283-84 (internal quotations and citation omitted).

In his Corrected Second Amended Complaint, Mr. Cunningham brings two claims against Davis: (1) claim under the FCRA and (2) a claim for common law invasion of privacy. Both claims arise from Davis's allegedly running a credit report on Mr. Cunningham without a permissible purpose under the FCRA.

Mr. Cunningham specifically alleges that "Micah Davis is the inside counsel and

employee of Defendant Nationwide Security Solutions, Inc. and can be served at 218 E.

4800 S. Salt Lake City, UT 84107 or PO Box 61953, Vancouver, WA 98666," Dkt. No.

104 at 1 ¶ 5, and that,

> [o]n ... April 24th 2017, Nationwide Security at the direction of Jason Cane decided to knowingly and illegally obtain the Plaintiff's consumer report aka credit report from at least Equifax through a data broker Microbilt, in violation of the Fair Credit Reporting Act 15 USC 1681(b) et seq. According to recent discovery responses, the only individual at Defendant Nationwide with access to obtain credit reports was the in house attorney Micah Davis, so either Micah Davis individually obtained the Plaintiff's consumer report illegally, or it was done with the login credentials and full knowledge and consent of Micah Davis, so either Micah Davis individually obtained the Plaintiffs consumer report illegally, or it was done with the login credentials and full knowledge and consent of Micah Davis and either way, it was done at the direction of Jason and Mairin Anne Moore. At no time had the plaintiff given consent for Nationwide Security to obtain the Plaintiffs credit report, nor did nationwide have any permissible purpose to obtain the Plaintiffs credit report. By obtaining the Platiniff s credit report illegally, the action reduces the Plaintiffs credit score and constitutes an invasion of privacy.

*Id.* at 8-9 ¶ 31. Mr. Cunningham further alleges that

> Micah Davis is liable for the FCRA violations and invasion of privacy damages as a result of the credit inquiry. Micah Davis was the only employee of Nationwide Security that maintaine[]d access credentials to obtain credit reports from Microbilt, so obviously he was highly involved in the credit inquiry regarding the Plaintiff. Micah Davis either did this on his own volition or at the direction and request of Jason Cane and Mairin Cane. Either way, Micah Davis is liable for all usage of his login credentials and credit inquiries made using those credentials[.]

*Id.* at 11 ¶ 41.

And Mr. Cunningham alleges that he "was residing or present in Dallas County

at all times relevant to this Complaint." Dkt. No. 104 at 1 ¶ 1.

In his response to Davis's MTD, Mr. Cunningham maintains that the Court has

28

personal jurisdiction over Davis because "Defend[an]ts knew they were calling into Texas and even fraudulently claimed to be Home protection Technologies in their pre-recorded messages to the Plaintiff, which is an actual Dallas area alarm company." Dkt. No. 116 at 2 of 5 ¶ 5. Mr. Cunningham asserts that "this indicates that Defendants were attempting to impersonate and trick Texas consumers into thinking that Defendant Nationwide was actually a local Texas area Alarm business." *Id.*

But Mr. Cunningham's general reference to the actions of "Defendants" is insufficient to show a *prima facie* case for personal jurisdiction over Davis specifically. *See Cunningham v. CBC Conglomerate LLC*, No. 4:17-cv-00793-ALM-CAN, 2018 WL 4039729, at *6 (E.D. Tex. July 27, 2018) ("Plaintiff must provide specific, individualized facts and/or statements of personal involvement or actions to make a *prima facie* case of personal jurisdiction."), *rep. & rec. adopted sub nom. Cunningham v. CBC Conglomerate LLC*, No. 4:17-cv-793, 2018 WL 4035958 (E.D. Tex. Aug. 23, 2018). Moreover, the allegations in Mr. Cunningham's pleading describing the offending calls fail to even mention Davis – Mr. Cunningham alleges that they were made by Nationwide Security and its "agents." These calls form the basis of Mr. Cunningham's TCPA claims, which Mr. Cunningham brings against other defendants. But other defendants' contacts with Texas that give rise to other claims cannot establish the Court's personal jurisdiction over Davis for Mr. Cunningham's FCRA and invasion of privacy claims. *See Helicopteros Atuneros, Inc.*, 472 F.3d at 275.

Mr. Cunningham further argues that the Court has personal jurisdiction over

Davis because, "at the time of running the report, Defendant Micah thought the Plaintiff lived in Texas and sent multiple letters to a Texas address for the account in question in March 2017, before the credit inquiry, indicating that he believed the Plaintiff lived in Texas." Dkt. No. 116 at 3 of 5 ¶ 7.

Even if Mr. Cunningham had presented evidence or alleged facts in his Corrected Second Amended Complaint to show that Davis knew Mr. Cunningham resided in Texas when Davis ran Mr. Cunningham's credit report – and Mr. Cunningham has not – Davis's knowledge of Mr. Cunningham's residence, alone, does not create a *prima facie* case for personal jurisdiction.

The Supreme Court has established that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984). "[T]he 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).

Mr. Cunningham, proceeding *pro se*, seems to invoke *Calder* here by arguing in his response to Davis's MTD that Davis "was targeting the Plaintiff in Texas." Dkt. No. 116 at 3 ¶ 6; *see Calder*, 465 U.S. at 789 ("[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California.").

But the Supreme Court has more recently rejected the view that the minimum contacts inquiry is satisfied by defendant's knowledge of a plaintiff's connections to a

forum combined with the foreseeable harm that the plaintiff suffered in that forum. *See*

*Walden*, 571 U.S. at 289. In *Walden*, the Supreme Court explained that

> [t]his approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. *See Rush,* 444 U.S. at 332, 100 S.Ct. 571. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.

*Walden*, 571 U.S. at 289. *Walden* instructs that the "'minimum contacts' analysis looks

to the defendant's contacts with the forum State itself, not the defendant's contacts with

persons who reside there," *id.* at 285, and that "[t]he proper question is not where the

plaintiff experienced a particular injury or effect but whether the defendant's conduct

connects him to the forum in a meaningful way," *id.* at 290; *see also Sangha v. Navig8*

*ShipMgmt. Private Ltd.*, 882 F.3d 96, 103-04 (5th Cir. 2018).

In cases decided after *Calder* but before *Walden*, many courts exercised personal

jurisdiction over a nonresident defendant alleged to have obtained a plaintiff's credit

report in violation of the FCRA when the defendant knew or to had reason to know that

the plaintiff lived in the forum state. *See Meyers v. Bennett Law Offices*, 238 F.3d 1068,

1074-75 (9th Cir. 2001) (concluding that the defendant purposefully availed itself of

Nevada because the defendant's unauthorized credit report "request was expressly

aimed at [Nevada] because it individually targeted the [plaintiffs] who [the defendant]

knew were Nevada residents" (internal quotations and citation omitted)); *Cole v. Am*.

*Family Mut. Ins. Co.*, 333 F. Supp. 2d1038, 1048 (D. Kan. 2004) ("[The defendant] was aware that plaintiff resided in Kansas. Accordingly, [the defendant]'s actions were 'expressly aimed' at plaintiff, a Kansas resident. The court, therefore, concludes that [the defendant]'s contacts with Kansas are sufficient to establish the required minimum contacts needed to exercise jurisdiction."); *Liu v. DeFelice*, 6 F. Supp. 2d 106, 108 (D. Mass. 1998) (exercising personal jurisdiction over a nonresident defendant alleged to have accessed the plaintiff's credit report in violation of the FCRA where the plaintiff's allegations "demonstrate[d] [the defendant's] understanding that he was acting in relation to a Massachusetts resident"); *cf. Rivera v. Bank One*, 145 F.R.D. 614 (D.P.R. 1993) (determining that the defendant had satisfied the purposeful availment prong where "[t]he record contains ample evidence of communications between plaintiff and defendant which tend to establish that defendant was aware that its continued refusal to correct plaintiff's credit report was causing plaintiff injury in Puerto Rico").

But, since the Supreme Court issued its decision in *Walden* and in relying on its holding, courts have held that a defendant's allegedly violating the FCRA to harm a plaintiff known to reside in the forum state, without more, does not establish purposeful availment of the forum state's privileges. *See Deveroux v. TT Mktg., Inc.*, No. 1:18-cv-487-AWI-SAB, 2018 WL 3968249, at *4 (E.D. Cal. Aug. 16, 2018) ("The only thing that connects [the defendant]'s credit reports to California is knowledge that [the plaintiff] resides in California and would experience harm in California. That is, [plaintiff] is the only thing that connects [the defendant] to California with respect to

[the defendant]'s credit reporting. This connection is insufficient to meet [the plaintiff]'s burden."); *Ratliff v. Celadon Trucking Servs., Inc.*, No. 17-cv-7163, 2018 WL 1911797, at *5 (N.D. Ill. Apr. 23, 2018) ("The only connection [the plaintiff] has identified between defendants' conduct and Illinois was his location; that is not enough to establish specific jurisdiction."); *Kampert v. Raymond James Fin., Inc.*, No. 6:17-cv-01036-JR, 2018 WL 3148248, at *3 (D. Or. Feb. 22, 2018) (holding that plaintiff had not shown purposeful availment because, under Ninth-Circuit precedent applying *Walden*, "[w]hile requesting a consumer report may be an intentional act," "such an act was not expressly aimed at Oregon" and because, "although plaintiff's injury was felt in Oregon, post-*Walden* jurisprudence counsels that this connection alone is insufficient"), *rep. & rec. adopted in part, rejected in part on other grounds*, No. 6:17-cv-01036-JR, 2018 WL 2063931 (D. Or. May 3, 2018); *Henkin v. Gibraltar Private Bank & Trust Co.*, No. CV 16-5452, 2018 WL 557866, at *4 (E.D.N.Y. Jan. 22, 2018) (holding that the plaintiff failed to establish a *prima facie* showing of personal jurisdiction where, "even charging [the defendant] with the information of Plaintiff's New York Residency," "the only connection between the allegedly tortious acts committed by Defendant and the state of New York is Plaintiff's presence within the state"); *Cole v. Capital One*, No. GJH-15-1121, 2016 WL 2621950, at *3 (D. Md. May 5, 2016) ("The mere fact that Data Mortgage obtained Plaintiff's credit report and that Plaintiff is a Maryland resident does not establish that Data Mortgage 'purposefully availed' itself of the privilege of conducting activities in Maryland."); *cf. Sangha*, 882

33

F.3d at 103-104 & 104 n.3 (in the context of a claim for tortious interference, discussing *Walden*'s clarification of *Calder* and finding no personal jurisdiction where, despite evidence that the defendant "was likely aware" that Plaintiff would be just outside of Houston at the time of the allegedly offending conduct, "the allegation that the 'effects' ... were felt in Houston are nothing more than fortuitous"); *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 952 (E.D. Mich. 2015) (without discussing the defendants' knowledge of the plaintiff's residence, declining to exercise personal jurisdiction in an FCRA case where "the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan," noting that "[n]one of the defendants' challenged conduct had anything to do with Michigan itself").

The undersigned finds the post-*Walden* cases cited above persuasive and consistent with the governing standards that *Walden* provides. Here, Mr. Cunningham has alleged no facts showing that Davis made any of his own contacts with Texas. Even if Davis knew that Mr. Cunningham was a Texas resident when Davis ran Mr. Cunningham's credit report, the only connection that Mr. Cunningham has identified between Davis's improper credit inquiry and Texas was Mr. Cunningham's location, and "[Mr. Cunningham cannot be the only link between [Davis] and the forum." *Walden*, 134 S.Ct. at 1122; *see also Sangha*, 882 F.3d at 103 ("Mere injury to a forum resident is not a sufficient connection to the forum.").

Because Mr. Cunningham has failed to show a substantial connection between Davis and the State of Texas, Mr. Cunningham's claims against Davis should be dismissed under Rule 12(b)(2). The undersigned accordingly does not reach Davis's alternative bases for dismissal.

### Recommendation

For the reasons discussed above, the Court should deny Defendant Nationwide's First Motion to Dismiss Second Amended Complaint, Alternatively, Motion to Strike Second Amended Complaint [Dkt. No. 101] and should grant Defendant Micah Davis's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(6) and Joinder in Nationwide's Motion to Dismiss for Improper Venue [Dkt. No. 112]. Plaintiff Craig Cunningham's claims against Defendant Micah Davis should be dismissed without prejudice to Plaintiff's right to renew his claims by filing a complaint that complies with Federal Rule of Civil Procedure 8 in a jurisdiction where personal jurisdiction over Defendant Micah Davis could be obtained.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to

the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 31, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE